# Illinois Official Reports

## Appellate Court

---

### *Lee v. Godinez*, 2014 IL App (3d) 130677

---

| | |
|---|---|
| Appellate Court Caption | LINCOLN A. LEE, Plaintiff-Appellant, v. SALVADOR A. GODINEZ, Director of the Department of Corrections; TY BATES, Deputy Director of the Department of Corrections; SANDRA FUNK; MARC HODGES, Warden of the Department of Corrections; RANDY STEVENSTON, Defendants-Appellees. |
| District & No. | Third District<br>Docket Nos. 3-13-0677, 3-13-0889 cons. |
| Filed | June 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the denial of plaintiff's writ of *mandamus* alleging that defendant officials of the Department of Corrections abused their discretion when they denied plaintiff good-time credits, work release, and electronic home detention based on his prior domestic battery conviction and that a change to the Unified Code of Corrections allowing for the discretionary award of good-time credit constituted a violation of the *ex post facto* clause, plaintiff's appointed appellate counsel was properly allowed to withdraw from the appeal pursuant to *Anders* and plaintiff's appeal was dismissed, since the "perks" plaintiff claimed he was denied were clearly matters left to the discretion of the Director of the Department of Corrections, and in the absence of any *ex post facto* violations or any other constitutional abuses, no issues of merit were presented. |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 13-MR-381; the Hon. Michael F. Meersman, Judge, presiding. |
| Judgment | Motion to withdraw allowed; appeal dismissed. |

Counsel on
Appeal

Nate Nieman, of Moline, for appellant.

Lisa Madigan, Attorney General, of Chicago (Terry A. Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellees.

Panel

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Justice McDade specially concurred, with opinion.

## OPINION

¶ 1    On May 1, 2013, plaintiff, Lincoln Lee, filed a petition for writ of *mandamus* in the Rock Island County circuit court against defendants, Department of Corrections Director Salvador Godinez, Deputy Director Ty Bates, transfer coordinator Sandra Funk, Warden Marc Hodges, and head counselor Randy Stevenston (hereinafter, defendants). The petition, brought pursuant to section 14-101 of the Code of Civil Procedure (the Code) (735 ILCS 5/14-101 (West 2012)), alleged that defendants abused their discretion in denying plaintiff good-time credits, work release, and electronic home detention based upon his prior domestic battery conviction, and that section 3-6-3(a)(3) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3-6-3(a)(3) (West 2012)) violated the *ex post facto* clause. U.S. Const., art. I, §§ 9, 10; Ill. Const. 1970, art. I, § 16.

¶ 2    The trial court, *sua sponte*, denied the petition without hearing on August 12, 2013. The court appointed counsel on October 22, 2013. Plaintiff's appointed counsel filed a notice of appeal on November 14, 2013.

¶ 3    Plaintiff's counsel has now filed a motion indicating that the instant appeal presents no issues of merit. This motion, filed in accordance with *Anders v. California*, 386 U.S. 738 (1967), requests that counsel be permitted to withdraw. Plaintiff opposes the motion. For reasons set forth below, we allow the motion and dismiss this appeal.

¶ 4                                ANALYSIS
¶ 5                       I. Supplemental Sentencing Credit
¶ 6    Plaintiff first argues that he was wrongfully denied a 180-day supplemental sentencing credit (SSC) to which he was entitled. Plaintiff argues that defendants prevented him from receiving said credits based on an unwritten policy denying SSC to inmates with previous domestic violence convictions, which is arbitrary and constitutes an abuse of discretion.

¶ 7    Rules and regulations for sentencing credit are governed by section 3-6-3 of the Unified Code (730 ILCS 5/3-6-3 (West 2012)). At issue here is section 3-6-3(a)(3), which provides in pertinent part as follows:

> "(3) The rules and regulations shall also provide that the Director *may* award up to 180 days additional sentence credit for good conduct in specific instances as the Director deems proper. The good conduct may include, but is not limited to, compliance with the rules and regulations of the Department, service to the Department, service to a community, or service to the State." (Emphasis added.) 730 ILCS 5/3-6-3(a)(3) (West 2012).

¶ 8    The section then goes on to enumerate those offenses for which the Director shall not award more than 90 days of sentence credit for good conduct.

¶ 9    Finally, section 3-6-3(a)(3) provides:

> "Eligible inmates for an award of sentence credit under this paragraph (3) may be selected to receive the credit at the Director's or his or her designee's *sole discretion*. Consideration may be based on, but not limited to, any available risk assessment analysis on the inmate, *any history of conviction for violent crimes as defined by the Rights of Crime Victims and Witnesses Act*, facts and circumstances of the inmates's holding offense or offenses, and the potential for rehabilitation." (Emphases added.) 730 ILCS 5/3-6-3(a)(3) (West 2012).

The Rights of Crime Victims and Witnesses Act defines "any offense involving *** domestic battery" as a violent crime. 725 ILCS 120/3(c) (West 2012). A reading of section 3-6-3(a)(3) makes it clear that good behavior in prison renders an inmate eligible for good-time credit at the Director's sole discretion.

¶ 10    The trial court relied solely on section 3-6-3(a)(3) in denying the petition, noting that because the award of good-time credit is at the Director's sole discretion, there is no statutory right to good-time credit, nor is the Director required to have a written policy. The court found that the fact plaintiff did not receive such a credit did not entitle him to a writ of *mandamus*.

¶ 11    Plaintiff's counsel relies on the same language in his motion to withdraw, contending that plaintiff's argument for SSC does not state a claim for *mandamus* relief because the award of meritorious good-time credit is discretionary.

> " '*Mandamus* is an extraordinary civil remedy that will be granted to enforce, as a matter of right, the performance of official nondiscretionary duties by a public officer. [Citation.] *** *Mandamus* will issue only where the plaintiff has fulfilled his burden [citation] to set forth *every* material fact needed to demonstrate that (1) he has a clear right to the relief requested, (2) there is a clear duty on the part of the defendant to act, and (3) clear authority exists in the defendant to comply with an order granting *mandamus* relief. [Citation.]' " (Emphasis in original.) *Dupree v. Hardy*, 2011 IL App (4th) 100351, ¶ 22 (quoting *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 433-34 (2007)).

¶ 12    We find *Helm v. Washington*, 308 Ill. App. 3d 255 (1999), instructive. Donald Helm brought a *mandamus* action against the Director of the Illinois Department of Corrections. Helm claimed he was entitled to 180 days of meritorious good-time credit, which the Director arbitrarily denied. *Id*. at 256. He alleged that he was serving an eight-year sentence

- 3 -

for burglary and had subsequently completed educational programs and work assignments, qualifying him for 180 days of meritorious good-time credit, pursuant to section 3-6-3(a)(3) of the Unified Code (730 ILCS 5/3-6-3(a)(3) (West 1998)). According to Helm, the Director denied his request for good-time credit on the grounds that he had a prior order of protection filed against him.

¶ 13        The Director moved to dismiss the petition on the grounds that the award of meritorious good-time credit is discretionary. The trial court granted the motion and dismissed the cause. In affirming the dismissal, this court found that Helm did not adequately state a claim for *mandamus* relief. Specifically, the petition alleged only that he qualified for consideration of good-time credit against his sentence, which could be granted or denied at the Director's discretion. *Helm*, 308 Ill. App. 3d at 257. As such, Helm failed to allege a clear duty to act on the part of the Director, and the trial court did not err in dismissing the petition. *Id*. at 258. The court emphasized that the decision to award good-time credit is discretionary under section 3-6-3(a)(3), and that "[d]efendant is not required to grant the credit or even consider it." *Id*. at 257 (citing *Brewer v. Peters*, 262 Ill. App. 3d 610 (1994)).

¶ 14        Similarly, the plaintiff here has failed to allege either a clear right to relief or a clear duty to act by defendants. The plain language of section 3-6-3(a)(3) vests the Director with full discretion to award or deny good-time credit as he deems proper. Plaintiff has no right to good-time credit and, thus, has no clear right to the relief requested. The fact that the denial of good-time credit might be based on a past conviction for domestic battery is rendered inconsequential. Nonetheless, the 2012 amendments to section 3-6-3(a)(3) make it clear that the Director may consider such a conviction in determining whether to grant early release to an otherwise eligible inmate. Therefore, plaintiff's basic premise that the Director relied upon an unwritten rule is a false premise. The "unwritten rule" upon which plaintiff alleges defendants relied is written within the statute.

¶ 15        In reaching this conclusion, we would be remiss not to mention *Guzzo v. Snyder*, 326 Ill. App. 3d 1058 (2001). In *Guzzo*, this court affirmed the trial court's immediate release of plaintiff pursuant to a writ of *mandamus*, where it found that the Director's refusal of Guzzo's good-time credit, pursuant to section 3-6-3(a)(3) of the Unified Code, was based on an unwritten policy that excluded inmates with domestic battery arrests from eligibility. *Id*. at 1063. In making its determination, the *Guzzo* court noted that the formulation of a good-time policy was within the Director's discretion, but that the discretion was "restricted" by both the enabling statute and the related parts of the Illinois Administrative Code. *Id*. at 1062; 5 ILCS 100/5-20 (West 2000). It, therefore, found that the Director's policy of denying good-time credit based solely on an inmate's domestic battery arrest was both unwritten and unrelated to prison discipline; thus, the use of the policy was an abuse of discretion, which implicated the *mandamus* exception. *Guzzo*, 326 Ill. App. 3d at 1064.

¶ 16        The *Guzzo* court declined to follow the rationale of *Helm v. Washington*, or rather, attempted to distinguish it. It observed that *Helm* affirmed the trial court's dismissal of the plaintiff's request for *mandamus* relief, and held that because the award of meritorious good-time credit was discretionary, *mandamus* was inappropriate. The court explained, however, that the plaintiff in *Helm* did not allege an abuse of discretion by the Director implicating the *mandamus* exception, nor did he assert that he had a clear right to relief or that the Director had a clear duty to act. *Id.*

¶ 17 Having examined both cases, we cannot see how this distinction would allow the *Guzzo* court to reach such a conclusion. Because the Director has the discretion to award meritorious good-time credit, Helm's argument could not have been construed as anything other than an argument that the Director abused his discretion in arbitrarily denying that credit. Finally, the *Guzzo* court paid little attention to the requirements necessary for a *mandamus* action to lie. Guzzo, like Helm and the plaintiff in this case, alleged that the warden failed to award him good-time credit to which he had absolutely no right.

¶ 18 As the *Guzzo* court declined to follow the rationale in *Helm*, we similarly decline to follow the rationale of *Guzzo*. To the extent *Guzzo* was ever good law, the 2012 amendments to section 3-6-3(a)(3) make it clear that the Director may consider an eligible inmate's history of domestic battery convictions. 730 ILCS 5/3-6-3(a)(3) (West 2012). Allowing such matters to proceed on a *mandamus* petition effectively strips the Director of that statutorily vested discretion. The General Assembly vested the Director, not the courts, with the discretion to award SSC. *Mandamus* relief is therefore inappropriate. The *Guzzo* court failed to recognize that the Director might reasonably conclude that an inmate with a history of violent crimes against women or children might very well be a model prisoner due to the absence of women or children in the penitentiary. It simply is not an abuse of discretion to deny that inmate discretionary early release. Regardless, the Director's discretion in the matter of awarding meritorious good-time credit negates the notion that any inmate has a clear right to the credit.

¶ 19 II. SSC and the *Ex Post Facto* Clause

¶ 20 Plaintiff also argues that prior to the 2010 suspension of the 180-day meritorious good time and supplemental meritorious good time, the award of good-time credit was not discretionary and the revised statute violates the *ex post facto* clause. A review of the text amendments to section 3-6-3 of the Unified Code reveals that the statute has always stated that the "rules and regulations shall also provide that the Director *may* award up to 180 days additional good conduct credit for meritorious service in specific instances as the Director deems proper." (Emphasis added.) 730 ILCS 5/3-6-3(a)(3) (West 2008). We acknowledge that it was not until Public Act 97-697 (eff. June 22, 2012) that the legislature added the language to section 3-6-3(a)(3) that provided inmates eligible for an award of sentence credit may be selected to receive the credit at the Director's or his or her designee's sole discretion. Even so, we observe that when the legislature uses the word "may," it is generally considered as expressing a permissive or directory reading. *People v. Graham*, 406 Ill. App. 3d 1183, 1194 (2011).

¶ 21 Furthermore, plaintiff has failed to establish that revised section 3-6-3(a)(3) presents this court with an *ex post facto* violation.

¶ 22 The Illinois Constitution, like the United States Constitution, forbids the enactment of *ex post facto* laws. Ill. Const. 1970, art. I, § 16. "Our supreme court has interpreted the *ex post facto* clause of the Illinois Constitution in accord with the pronouncements of the United States Supreme Court." *Hadley v. Montes*, 379 Ill. App. 3d 405, 409 (2008) (citing *People v. Cornelius*, 213 Ill. 2d 178, 207 (2004)). "[T]he focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' *** but on whether any such change alters the definition of criminal conduct or increases the penalty

by which a crime is punishable." *California Department of Corrections v. Morales*, 514 U.S. 499, 506 n.3 (1995). To establish an *ex post facto* violation, a " 'plaintiff must show the following: (1) a legislative change; (2) the change imposed a punishment; and (3) the punishment is greater than the punishment that existed at the time the crime was committed.' " *Hadley*, 379 Ill. App. 3d at 409 (quoting *Neville v. Walker*, 376 Ill. App. 3d 1115, 1118-19 (2007)).

¶ 23　　Plaintiff relies on *Weaver v. Graham*, 450 U.S. 24 (1981), for the proposition that "reducing or eliminating early-release credits for good behavior is an *ex post facto* law that increases punishment." This reliance is misplaced. The plaintiff in *Weaver* sought relief via a *habeas corpus* petition, not a writ of *mandamus*, and was challenging the validity of a Florida statute that modified the amount of "gain time" he was able to receive. In finding that the change in the law governing the amount of "gain time" that a prisoner automatically earned by operation of law amounted to an *ex post facto* law, the Supreme Court explicitly recognized the difference between "gain time" that a prisoner automatically earned by operation of law and "gain time" that was discretionary and awarded based on special behavior.

¶ 24　　*Weaver* is thus inapplicable to this case, where the sentence credit plaintiff is seeking here is not awarded based on the operation of law. The award of SSC is, and always has been, discretionary. Whether or not the plaintiff actually received it has no effect whatsoever on his actual sentence. The changes to section 3-6-3(a)(3) did not impose a punishment; failure to award discretionary SSC credits does not increase plaintiff's punishment. There is no *ex post facto* violation.

¶ 25　　　　　　　　　　　　III. Work Release and Electronic Home Detention

¶ 26　　Plaintiff also contends that he was wrongfully denied both work release and electronic home detention to which he is entitled, again, arguing that defendants abused their discretion and he is, therefore, entitled to *mandamus* relief. However, plaintiff does not cite to the applicable law regarding work release or electronic home detention, and he relies solely on those arguments made in regard to the denial of his SSCs.

¶ 27　　As with SSC, work-release programs and electronic home detention are also a matter of discretion for the Department of Corrections. "A prisoner had no constitutional right, no liberty or property interest entitled to due-process protection, to participate in a work-release program." *Briggs v. Walker*, 375 Ill. App. 3d 849, 850 (2007). "[N]either the provisions in the Unified Code *** nor the Illinois Constitution, each of which propounds general policies of rehabilitation and restoration to useful citizenship, creates an entitlement to participate in the work-release program." *Id*. at 851 (citing *Williams v. Thompson*, 111 Ill. App. 3d 145, 149-51 (1982)). "[W]hether a prisoner may participate in a work-release program is a matter of discretion solely for the IDOC." *Id*. Moreover, it has been held that consideration of an inmate's criminal history, which plaintiff claims happened here, is permissible in determining whether the inmate poses a risk to society and is thus not a suitable candidate for a prerelease program. See *Fuller v. Lane*, 686 F. Supp. 686 (C.D. Ill. 1988). Likewise, as pointed out above, consideration of plaintiff's prior domestic battery conviction does not, as a matter of law, constitute an abuse of discretion. Given the discretionary nature of

work-release programs, plaintiff has failed to show that he has a clear right to the relief requested or that defendants have a clear duty to act.

¶ 28    Electronic home detention is governed by section 5-8A-3 of the Electronic Home Detention Law (730 ILCS 5/5-8A-3 (West 2008)). It allows for certain individuals serving terms of imprisonment to be released from a correctional institution and placed in an electronic home detention program. "A person serving a sentence for a conviction of a Class X felony [as the plaintiff here], other than an excluded offense, *may* be placed in an electronic home detention program for a period not to exceed the last 90 days of incarceration, provided that the person was sentenced on or after the effective date of this amendatory Act of 1993 and provided that the court has not prohibited the program for the person in the sentencing order." (Emphasis added.) 730 ILCS 5/5-8A-3(c) (West 2008).

¶ 29    *Hadley v. Montes*, 379 Ill. App. 3d 405 (2008), while not directly on point, is instructive as to the discretionary nature of the electronic home detention program. Plaintiff filed a complaint for injuctive, declaratory, and *mandamus* relief based on the requirement that he submit to electronic monitoring while on parole. The Fourth District found that "the electronic monitoring condition was another tool the [parole] Board could utilize in its discretion to assist the plaintiff in leading a law-abiding life as he stepped outside the confines of the penitentiary and ventured back into a free society." *Id*. at 414. As it was a discretionary function, the courts found that plaintiff's claim for *mandamus* was without merit.

¶ 30    Granted, the defendant in *Hadley* was subject to electronic monitoring on parole, and not looking to shorten any potential time in prison via home detention, but the discretionary nature of the electronic home detention law is the same. We, therefore, find that *mandamus* relief in regard to electronic home detention is also inappropriate.

¶ 31    It seems clear that the General Assembly intends that the Director, and not the courts, run the day-to-day operations of the Department of Corrections. This includes deciding whether any particular inmate receives the discretionary "perks" sought by the plaintiff here. Absent constitutional violations, it is not the court's job to run the penitentiary. Plaintiff does not allege he was denied good-time credit because he is a member of a protected class. We have found no *ex post facto* violations, and plaintiff alleges no other constitutional violation.

¶ 32    Because we agree that this appeal presents no issues of merit, we allow counsel's motion to withdraw. For the same reason, we also dismiss this appeal.

¶ 33                                   CONCLUSION
¶ 34    For the foregoing reasons, the motion to withdraw is allowed. Appeal dismissed.

¶ 35    Motion to withdraw allowed; appeal dismissed.

¶ 36    JUSTICE McDADE, specially concurring.
¶ 37    The majority has found that the trial court correctly denied the plaintiff's petition for a writ of *mandamus* to require the Director of the Illinois Department of Corrections to reverse his denial of good-time credit, work release and electronic home detention because of his prior domestic violence conviction. In the decision, the plaintiff's *ex post facto* issue is also

rejected. As a result, the motion of plaintiff's counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), to be allowed to withdraw because there are no meritorious issues for appeal is granted and the Director's denial of sentencing relief stands affirmed. I concur with that decision.

¶ 38　　I write separately because I cannot agree with the majority's conclusions about this court's earlier decision in *Guzzo v. Snyder*, 326 Ill. App. 3d 1058 (2001).

¶ 39　　It should first be noted that the version of the applicable statute in effect when *Guzzo* was decided differed in significant and relevant respects from the current version of that law. Although *Guzzo* has been rendered largely irrelevant by the legislative changes, the majority still attempts to discredit its conclusion that *mandamus* can apply when a public official exercises his discretion in violation of the controlling act and its administrative rules and regulations.

¶ 40　　The statute and regulations at issue in *Guzzo* and in the instant case relate to the award of certain forms of sentencing relief that can be awarded by the Director of the Illinois Department of Corrections under the Corrections Code.

¶ 41　　In their 2000 versions, section 3-6-3(a)(3) (730 ILCS 5/3-6-3(a)(3) (West 2000)) and section 107.210 of Title 20 of the Illinois Administrative Code (20 Ill. Adm. Code 107.210, adopted at 20 Ill. Reg. 6745 (eff. May 5, 1996)) put limits on the good-time credit available for inmates convicted of specific enumerated felonies, *not* including domestic violence, or who ran afoul of articulated behavioral standards. Nothing in either the statutes or administrative regulations authorized the Director to create and implement a policy of arbitrarily withholding sentencing relief for persons arrested for or convicted of domestic violence offenses.

¶ 42　　The legal holding in *Guzzo*, as I read it, is that *mandamus* is available to compel the Director to exercise his discretion in conformity with the statutes and regulations rather than contrary to them. In the context of the contemporaneous versions of the law, that decision appears to have been correct.

¶ 43　　One could quite reasonably argue that, having reached that conclusion, the court went a step too far in determining that the record was devoid of any indication that the Director had considered any other factors or misconduct or misbehavior in denying sentencing relief and awarding that relief on its own. That action, however, does not negate the court's finding that *mandamus* was available on the facts of that case.